UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>KENNETH GRAY,<br><br>　　　　　Defendant. | Case No. 19-cr-259 (TFH) |

MEMORANDUM IN AID OF SENTENCING

## Introduction

On July 19, 2019, Kenneth Gray was arrested on the charge that brings him before this Court. Mr. Gray, however, was initially charged in D.C. Superior Court, where the case remained until the government elected to bring the case in District Court on August 12. The Bureau of Prisons Sentence Computation Center has confirmed that Mr. Gray will receive credit for time served starting from the date of his arrest. Additionally, the BOP confirmed that on a sentence of 15 months, Mr. Gray will receive 67 days of "good time credit." Thus, if a sentence of 15 months is imposed, Mr. Gray's projected release date is August 13, 2020.

The government has agreed to recommend a sentence at the low end of the applicable guidelines—which the parties agree stands at 15 months. This understanding relies on the criminal history report completed by U.S. Probation. *See* ECF No. 14.

Accordingly, Mr. Gray respectfully submits that a sentence of time served is just, fair, and reasonable.

## Sentencing Legal Framework

In sentencing, the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2).

In determining such a sentence, the sentencing court must consider the United States Sentencing Guidelines, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to serve the purposes of sentencing, the kinds of sentences available, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. *Id.* § 3553(a)(1). In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth. *Id.* § 3661.

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is *not* an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582(a) (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." *Id.* § 3553(a) (emphasis added).

## Discussion

The conduct that brings Mr. Gray before this Court is, at least in part, attributed to his youth. He was just a teenager a month before the offense. Consequently, the government's forum choice is particularly significant in this case.

2

In Superior Court, Mr. Gray would be eligible for a Youth Rehabilitation Act sentence, which recognizes that a person under 24 years old should be treated differently than a similarly-situated mature adult. *See* D.C. Code §§ 24-901, 24-903. By electing to charge this case in Federal Court, at barely 20 years old, Mr. Gray was denied any possibility of a Youth Act sentence. As a result, Mr. Gray now has a federal felony conviction and is subject to all of the collateral consequences that accompany it.

### A. *Mr. Gray's History and Characteristics*

The abandonment of his father at an early age was a traumatic event that Mr. Gray would not soon recover from. His mother, Evelyn, remembers Mr. Gray asking his father to stay the day he abandoned the family. Years of undiagnosed and untreated depression would follow. With his schooling further limited by a learning disability, it was not long before Mr. Gray started gravitating towards negative influences, which in turn led to his contact with the criminal justice system.

Mr. Gray's adolescence, however, matters a great deal. At only 20 years old, his brain is not fully developed. The Supreme Court has recognized developments in psychology and brain science showing that juveniles (1) "have a lack of maturity and underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking"; (2) "are more vulnerable to negative influences and outside pressures, including from their family and peers," "have limited control over their own environment and lack the ability to extricate themselves from horrific,

3

crime-producing settings"; and (3) possess character traits that are "less fixed" than those of an adult. *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (quotation marks and citations omitted). The Court has concluded that, because of these qualities, juveniles "have diminished culpability and greater prospects for reform." *Id.*; *see also Roper v. Simmons*, 543 U.S. 551, 569-70 (2005).

Research shows that "psychosocial capabilities that improve decision making and regulate risk taking—such as impulse control, emotion regulation, delay of gratification, and resistance to peer influence—continue to mature well into young adulthood."[1] Thus, "young adults simply do not have the physiological capacity of adults over age 25 to exercise judgment or control impulses,"[2] and it is "difficult to justify applying permanent or long-term sanctions to young offenders," including young adults in their early twenties.[3]

The Youth Rehabilitation Act recognizes this. Recently, the D.C. Council amended the YRA in a number of ways, including by raising the eligibility to 24 years of age. *See* D.C. Code § 24-901(6). Crucially, the Amendment also expanded the pool of individuals eligible to have a youthful conviction set aside. *See* D.C. Code § 24-906(e-1). Under the original YRA scheme, youthful offenders had to be

---

[1] James C. Howell et al., *Bulletin 5: Young Offenders & an Effective Response in the Juvenile & Adult Systems: What Happens, What Should Happen, & What We Need to Know*, Doc. No. 242935, at 17, Papers From the Study Group on Transitions From Juvenile Delinquency to Adult Crime, Nat'l Inst. Of Justice, U.S. Dep't of Justice (July 2013) (unpublished) (citation omitted).

[2] *Id.* at 18.

[3] Carrie Mulford, *Explanations for Offending*, Nat'l Inst. Of Justice, U.S. Dep't of Justice (May 2014) at 2.

sentenced under the YRA to be eligible to have their conviction set aside in the future. *See* YRAA Committee Report at 21. But now any individual who is YRA-eligible—whether or not they are YRA-sentenced—may file a motion to set aside their conviction. *Id.*; *see* D.C. Code § 24-901(e-1).

Thus, even if Mr. Gray were not to be sentenced under the YRA, if the case remained in Superior Court, he could have petitioned the Court at a later date to have his conviction set aside. No such protection exists for him now.

Despite this, Mr. Gray is determined on taking control of his life and putting this chapter behind him. He wants to continue pursuing his education and address his mental health issues. Mr. Gray's medical records reflect that he has been diagnosed with major depression and post-traumatic stress disorder. These diagnoses, however, are a recent development. Going through his formative years with undiagnosed mental health issues and a lack of positive direction led Mr. Gray to some regretful decisions. Decisions that he understands do not come without consequences.

Mr. Gray accepts responsibility for his actions. He recognizes the long road ahead in order to get his life back on track and is ready for the challenge. He hopes to emerge from this a better person—ready to resume a productive role in society and return to his family.

## Conclusion

For the foregoing reasons, and such other reasons as may be presented at the sentencing hearing, Kenneth Gray respectfully requests that the Court impose a sentence of time served. Mr. Gray has served the recommended guideline sentence—additional incarceration, in this case, does nothing to further the ends of justice.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


*/s/*
Jose A. German
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500